IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| TUNA PROCESSORS, INC., | CIVIL NO. CV05-00517 BMK |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF MOTION** |
| v. | |
| HAWAII INTERNATIONAL SEAFOOD, INC., | |
| Defendant/ Counterclaim Plaintiff, | |
| and WILLIAM R. KOWALSKI, | |
| Additional Counterclaim Plaintiff, | |
| v. | |
| TUNA PROCESSORS, INC., | |
| Counterclaim Defendant. | |

**MEMORANDUM IN SUPPORT OF MOTION**

Plaintiff and Counterclaim Defendant, Tuna Processors, Inc. ("TPI"), respectfully submits this Memorandum in support of its Motion to Disqualify Defendant Cades Schutte, LLP and/or Martin Hsia as Trial Counsel for Defendants Hawaii International Seafood, Inc. ("HIS") and William R.

Kowalski ("Kowalski").

Plaintiff requests that Cades Schutte LLP be disqualified as trial counsel for Defendant's William R. Kowalski and HIS; or in the alternative, should the court find that it cannot disqualify the Cades Schutte firm as trial counsel, that Martin Hsia and those who were active in the prosecution of the patent issue be disqualified as trial counsel.

## Summary of the Facts

The prosecution of U.S. Patent 5,972,401, issued to William R. Kowalski ("the '401 patent") will be important in this case. Plaintiff contends that the '401 patent is invalid in part due to the conduct of both Kowalski and his counsel Martin Hsia. Specific issues relating to the prosecution of the patent include representations that Mr. Hsia made to the United States Patent and Trademark Office (USPTO) related to the scope of U.S. Patent No. 5,484,619 issued to Yamaoka (the '619 patent), other prior art, the utility of the filed application, and the best mode for practicing the process taught by the '401 Patent.

Martin Hsia represented the Defendant, William Kowalski, in the prosecution of the '401 patent. Hsia is a partner with Cades Schutte, LLP. Hsia together with another partner of in the Cades Schutte firm, Milton Yasunaga, is currently counsel of record for Kowalski and HIS in this case.

One of Plaintiff's contentions is that the '401 patent is invalid and that Mr. Hsia misrepresented matters to the USPTO, failed to reveal pertinent information to the USPTO, and participated in active deception in obtaining the '401 patent. Plaintiff intends to call Hsia as a necessary witness on these subjects. Therefore, the Advocate-Witness Rule applies.

Discovery is not yet complete and the full scope of the grounds for disqualification is not now known. TPI has offered to withhold filing this motion until the close of discovery to allow the parties to review the case, determine the full scope of the conflict and possibly negotiate a resolution. It is possible that this case or the specific issue of disqualification could be resolved before trial. However, after being advised of TPI's intent to call Mr. Hsia as a witness, defendants' counsel has refused to waive any objections to timing or to refer the case to alternate counsel and demands that this motion be filed without delay. Because defendants are not willing to waive the objection to a later filing of this matter after the close of discovery and insist on being represented by the Cades Schutte firm, TPI brings this motion now pursuant to the scheduling set by the court to preclude any claim by defendants of surprise, waiver or undue prejudice.

## Argument

### *The Witness-Advocate Rule*

Determining a motion to disqualify counsel in a patent infringement suit raises "a procedural question that is independent of the patent issue in dispute." *See Panduit v. All State Plastics Mfg.*, 744 F.2d 1564, 1574, 223 USPQ 465 (Fed. Cir. 1984) (overruled on other grounds); *Richardson-Merrell v. Koller*, 472 US 424, 105 S. Ct. 2757, 86 L.Ed.2d 340 (1985). However, TPI believes that the patent issues related to the prosecution of the '401 patent are relevant to this motion and to the extreme remedy sought by TPI. Denying a party the right to select its own counsel requires serious consideration. *See Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993)*. Plaintiff does not bring this motion lightly. Disqualification of Cades Schutte as trial counsel or Hsia and other Cades attorneys involved in the patent prosecution is necessary because of the nature of the claims, namely TPI's challenge to the validity of the '401 patent.

The Hawaii Rules of Professional Conduct provide in pertinent part, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." *See* HRPC 3.7(a). The rule serves the interest of all involved in the case. At a minimum, a simple and clear reading of the rule calls for the disqualification of Mr. Hsia.

"Calling a party's attorney as a witness undermines the integrity of the judicial process." *MacArthur v. Bank of New York,* 524 F. Supp 1205, 1208 (S.D.N.Y. 1981). In *MacArthur*, the court points out that "a jury may view an attorney as possessing special knowledge of a case" and lend the testifying attorneys arguments undue weight. *Id.*, at 1208.

TPI alleges that the '401 patent is unenforceable. Among the reasons that are alleged for the unenforceability of the '401 patent are actions by Kowalski and his attorneys and agents: misrepresentations before the USPTO, unclean hands and inequitable conduct and misuse of the '401 patent. Also at issue is discriminatory and anti-competitive licensing and attempts to license the patent following issuance. Proving these allegations requires the deposition and trial testimony of any attorney who handled the prosecution of the '401 patent or the subsequent attempts to license the '401 patent. Hsia handled the prosecution of the '401 patent and falls within the scope of HRPC 3.7(a) as he will be deposed and called as a witness in this litigation. He is also an attorney of record in the this litigation and should be barred from further participation as counsel.

### Representation Conflicts

TPI contends that the Cades firm, not just Hsia, should be disqualified as trial counsel under HRPC 3.7. TPI believes that this matter is not simply

one of another attorney in the firm testifying about an independent observation. To draw an analogy in this case, the issue is not one of an attorney in Kowalski's firm witnessing an accident wherein Kowalski was injured. This case is more akin to an accident case wherein one of the cars involved in the accident was driven by Kowalski's counsel. The intimate involvement of the specific counsel in the underlying transactions which are being challenged, as well as of the Cades firm as a whole, prevents both Mr. Hsia and the Cades firm's objective participation as counsel in this case.

Hawaii Rule of Professional Conduct 3.7 (b) specifically prohibits a lawyer from acting as an advocate-witness, but allows a law firm to represent a party in a trial in which another lawyer in the lawyer's firm will be called as a necessary witness. This rule is expressly limited by Rule 1.7 and Rule 1.9. Rule 3.7(b) broadens the circumstances under which a lawyer-witness may testify at trial yet not be disqualified. Under Hawaii's former Code of Professional Conduct and the Model Code, a lawyer was prohibited from representing a party if it was anticipated that the lawyer or a member of the lawyer's firm would be called to testify as a witness. DR 5-101(B). The vast majority of case law related to the disqualification of patent counsel as trial counsel arises under the older Model Code, which

took a broader view of imputed disqualification. The case law under Model Disciplinary Rule 5-102 requires disqualification of a firm when a member of the firm would be called as a witness; effectively barring counsel who prosecuted and obtained patents on behalf of an inventor from then enforcing or litigating those patents at trial.

Plaintiff alleges that Defendants, through counsel, failed to disclose pertinent facts to the USPTO. As such, Cades Schutte has much at stake. The intimate involvement of the Cades Schutte firm and its partner Martin Hsia in the prosecution of the '401 patent rises to the level of apparent of impropriety for which disqualification should be granted. TPI will be forced to try this case with both Kowalski as an actual defendant, and opposing counsel Cades Schutte as a *de facto* defendant. Cades Schutte will be placed in the conflicting position of acting as counsel for both its client and itself. Permitting Cades Schutte to both testify and advocate raises far too many potential chances for jury confusion.

The issues likely to be addressed in the anticipated testimony of Martin Hsia are central enough to the case to rise to the level of an actual conflict not with a former or other client, but with the firm of Cades Schutte itself. Looking at the various ethical rules as a whole, the court should disqualify the whole firm. This type of conflict may not be waived by a

client. *See Supreme Beef Processors v. American Consumer Indus.*, 441 F. Supp. 1064, 1068 (N.D. Tex. 1977).

Moreover, in *Crossroads Systems v. Dot Hill*, W.D. Tex., No. A-03-CA-754-SS, Lexis 36181 (W.D.Tex. April, 31, 2006), the court reviewed the conflict of interest arising from prosecution counsel's firm representing a client in trial, and included Model Rule 3.7(b) and Texas' similar state rule in its analysis. The court found that the proper remedy was to disqualify all members of the testifying prosecution counsel's firm from serving as trial counsel.

The *Crossroads* court considered factors relevant in this case, including (a) the impropriety of having a testifying firm comment on, argue about and praise its own work as prosecution counsel; (b) the broad spectrum of potential issues related to impeachment, such as "potential sources of bias, including the amount of fees that were generated in the production" of the work testified about, *id., at 33*; (c) the possible disclosure of privileged communications (the "non-privileged facts (besides those contained in the opinion letters) were communicated between" the patent holder and its opinion counsel, *id.*); and the (d) credibility of the firm itself.

> "Since both the credibility and the legal acumen of [the firm] attorneys will be in issue at the trial, if other [firm] attorneys were permitted to serve as trial counsel, they would be placed in the awkward and unseemly position of having to advocate for

> the credibility and reliability of the testimony of their law partners. Even worse, if the testifying [firm] attorneys were to give testimony that was adverse to [client's] interests, the attorneys would be squarely confronted with a conflict of interest in grappling with competing duties to the client and the firm."

*Id., at 32.*

The court determined, "[i]n sum, there are simply too many potential rabbit trails and invitations to jury confusion if [the firm] attorneys were permitted to serve as trial counsel when their partners will be taking the stand as witnesses." *Id., at 34*

TPI alleges that Kowalski and Martin Hsia both knew that the '619 patent taught a method for the production of filtered wood smoke for use with meat such that no smoke taste or odor was imparted to the meat, creating "tasteless smoke." The process of obtaining tasteless and odorless smoke from burning woodchips had been established before Kowalski applied for his patent. *See Exhibit 1 (Affidavit of Charles J. Cardile, Bates Numbered USDC-Hi 00787 – 00002014 - 00002015).*

In their *ex parte* prosecution of the '401 patent, Martin Hsia and Kowalski actively misled the USPTO. Such active misrepresentation included the affirmative statement that:

> "U.S. Patent No. 5,484,619 to Yamaoka et al discloses a method and apparatus that use extra low temperature smoking of fish and meat to sterilize and prevent decomposition and

> discoloration while **imparting** an agreeable <u>**smoked taste and smell**</u>." ('401 patent, Exhibit 1, Col. 5, lines 58-62, emphasis added).
>     "<u>In every case prior to this invention the result has been a smoked flavored food.</u>"

Ex. 3, ('401 patent, Exhibit 1, Col. 4, lines 61-62). This statement is critical as it was on this basis alone that the USPTO examiner allowed the '401 patent to issue. Exhibit 4.

The mischaracterization of Yamaoka's method by Kowalski and Hsia revolves around the use by Yamaoka of the expression "imparts an agreeable taste and smell." In his attempt to justify the novelty of Kowalski's invention, Hsia, put words into Yamaoka's mouth by asserting that "imparting an agreeable taste and smell" means "imparting an agreeable *smoked* taste and smell." Hsia even went to the extent of quoting Yamaoka's response of June 12, 1995, to the USPTO, but deleted the second part of Yamaoka's sentence in order to convey a different meaning than Yamaoka intended. In his Declaration in Support of Petition to Make Special Under Rule 102(d), July 28, 1998, Hsia stated as follows:

> "It is true that page 5 of Yamaoka's June 12, 1995, response to office action states that "The cited references are not concerned with maintaining the original taste of the raw tuna suitable for raw eating," but Yamaoka is not directed to preserving the original taste of the raw tuna either."

Exhibit 5, at 3. However, Hsia did not provide the entire sentence quoted

621.084 / 8234-1                    10

from Yamaoka's response. The entire sentence reads as follows:

"The cited references are not concerned with maintaining the original taste of the raw tuna suitable for raw eating, *and fail to render obvious the present invention.*" (Emphasis added).

Exhibit 6, at 5 (Letter by Yamaoka dated June 12, 1995 in Response to Office Action mailed December 12, 1994). Hsia's omission of the second part of Yamaoka's sentence and replacement with "but Yamaoka is not directed to preserving the original taste of raw tuna either" makes it appear that Yamaoka did not preserve the original taste of tuna, which contradicts the plain meaning of Yamaoka's explanation when read in its entirety. This glaring omission cannot be explained away as an unintentional oversight, for the omitted portion goes right to the very heart of the subject matter.

TPI contends that Hsia or at the very least Kowalski knew the statements to be false at that time. TPI will also seek to show that Hsia either knew or should have known that these statements were false. The evidence will show that when Kowalski applied for his patent, product produced in accordance with the Yamaoka patent and possibly even purchased by Kowalski did not have a smoked flavor, smell or taste. Declaration of Richard Friend, ¶¶ 6-19, attached. TPI contends that the very basis for the '401 patent is a fraud.

Further, TPI contends that the best mode in the '401 patent is not the

best mode known to the applicant in the practice of the claimed invention at the time of application as required by statute. See 35 U.S.C. § 112 and *Consolidated Aluminum Corp. v. Foseco Inc.*, 910 F.2d 804, 15 USPQ 2d 1481 (Fed. Cir. 1990). The machine and apparatus of the Yamaoka '619 patent were in fact a superior embodiment of Kowalski's claimed invention at the time of the application. Friend Decl., ¶¶ 22-26. Evidence will show that since the issuance of the '401 patent, Kowalski and his licensees have continued to purchase Yamaoka '619 machines for the production of their product, and no functioning embodiment of the '401 best mode has ever been in use. *Id.*

The discovery process will reveal that at the time of the application of the '401 patent, the mode described in the claimed preferred embodiment was non-functional, and in fact has never worked. *Id.,* ¶¶ 22, 24. Similar conduct to Hsia's, that of submitting a fictitious or inoperable embodiment, has been found to warrant not only the canceling of the patent at issue, but also of all other patents obtained by the offending party, as the taint of a fraud on the USPTO extends to all of the conduct of the actor. *Consolidated Aluminum,* at 812.

*Preserving the Integrity of the Legal Profession.*

The circumstances of this case require the extreme measure of

disqualification of a party's litigation counsel and firm. Disqualification is necessary in order to protect more important interests than that of any one party, but the integrity of the legal profession.

TPI intends to question Hsia in his actions representing his client. It is a necessary element in the prosecution of the suit. While advocacy and argument are commonplace and expected on behalf of a client, the prosecution of a patent is an *ex parte* matter and there exists a greater duty. "'By reason of the nature of an application for patent, the relationship of attorneys to the Patent Office requires the highest degree of candor and good faith. In its relation to applicants, the Office . . . . must rely upon their integrity and deal with them in a spirit of trust and confidence . . . .'" *Kingsland v. Dorsey,* 338 U.S. 318, 319-320 (1949) (quoting with approval from Dorsey PTO case.) Accord, *Cupples v. Marzall,* 101 F. Supp. 579, 583, 92 USPQ 169, 172 (D.D.C. 1952). TPI will argue that Hsia failed in this duty and it is believed that the evidence will show that Hsia and Kowalski actively committed fraud on the USPTO.

The conflict between Kowalski and his counsel may not be waived by the client. *(See Supreme Beef, supra, at 7.)* The Rules of Professional Conduct also protect the bench and bar as well as the public at large. In *Supreme Beef* the district court in Texas stated,

> "Although these disciplinary rules are for the protection of clients, they are also for the protection f the bar and the integrity of the court.... these disciplinary rules [including the advocate-witness rule] may not be waived by the client."

See *Supreme Beef.*, 441 F. Supp. at 1068.

There is an argument that Hsia and his firm will be separately liable for their fraud. Cades Schutte may be liable to its own client through a failure to provide adequate advice. But more significantly, should it be borne out that Martin Hsia actively participated in obtaining a patent though fraud and then as counsel of record attempted to enforce a patent known to be obtained through fraud and therefore invalid, his liability for such conduct would be shared with Kowalski, his counsel, and all those acting in concert with them.

In sum, in the trial of the '401 patent, the firm of Cades Schutte will be on trial as a *de facto* defendant.

## CONCLUSION

In this case, Plaintiff intends to call Martin Hsia as a witness. Because the '401 patent is invalid, Plaintiff believes the testimony of Hsia is imperative. In the course of the examination of Hsia, TPI intends to specifically allege fraud and misconduct on the part of both Kowalski and Hsia and those acting in concert with them. Hsia and his association as a partner in the Cades Schutte will expose Cades Schutte to potential liability

to both Kowalski and possibly other parties. There exists in this matter a very real and express conflict that cannot be waived. Therefore, TPI requests that this court enter an Order disqualifying both Hsia and Cades Schutte, LLP from representing William Kowalski and Hawaii International Seafood, Inc. at trial. At a minimum, Mr. Hsia should be disqualified as trial counsel.

      DATED: Honolulu, Hawaii, July 27, 2006

                              /s/ Louise K. Y. Ing
                              PAUL ALSTON
                              LOUISE K. Y. ING
                              ALLISON KIRK GRIFFITHS
                              CARL D. CROWELL
                              Attorneys for Plaintiff and Counterclaim
                              Defendant TUNA PROCESSORS, INC.