CADES SCHUTTE LLP

MILTON M. YASUNAGA        3058
ALLISON MIZUO LEE         7619
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4216
Telephone:  (808) 521-9200
E-mail: myasunaga@cades.com

Attorneys for HAWAII INTERNATIONAL
SEAFOOD, INC., and WILLIAM R. KOWALSKI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TUNA PROCESSORS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HAWAII INTERNATIONAL<br>SEAFOOD, INC.<br><br>Defendant/Counterclaim<br>Plaintiff,<br><br>and WILLIAM R. KOWALSKI<br><br>Additional Counterclaim<br>Plaintiff,<br><br>v.<br><br>TUNA PROCESSORS, INC.,<br><br>Counterclaim Defendant. | CIVIL NO. 05-00517 BMK<br><br>HAWAII INTERNATIONAL<br>SEAFOOD, INC.'S AND WILLIAM<br>R. KOWALSKI'S MEMORANDUM<br>IN OPPOSITION TO PLAINTIFF'S<br>MOTION TO DISQUALIFY CADES<br>SCHUTTE, LLP AND/OR MARTIN<br>HSIA AS TRIAL COUNSEL FOR<br>DEFENDANTS; DECLARATION OF<br>MILTON M. YASUNAGA;<br>DECLARATION OF WILLIAM R.<br>KOWALSKI; EXHIBITS 1-15;<br>CERTIFICATE OF COMPLIANCE<br>WITH LOCAL RULE 7.5;<br>CERTIFICATE OF SERVICE<br><br><u>HEARING</u><br>Date:   September 8, 2006<br>Time:   2:00 p.m.<br>Judge:  Barry M. Kurren |

ImanageDB:666827.1

HAWAII INTERNATIONAL SEAFOOD, INC.'S AND
WILLIAM R. KOWALSKI'S MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY
CADES SCHUTTE, LLP AND/OR MARTIN HSIA AS
<u>TRIAL COUNSEL FOR DEFENDANTS</u>

## I. <u>INTRODUCTION AND SUMMARY</u>

Hawaii International Seafood, Inc., (HISI) and William R. Kowalski

(Kowalski) oppose Tuna Processors, Inc.'s (TPI) the motion to disqualify for the

reasons summarized below:

> A. TPI Has Not Met Its Burden Of Showing That Mr. Hsia Is A Necessary
> Witness.
>
>> 1) TPI Asserts That Mr. Hsia's Testimony Is Needed For TPI's
>> "Inequitable Conduct" Defense, But It Is Clear That TPI's Inequitable
>> Conduct Defense Fails As A Matter Of Law Because Mr. Hsia's
>> Statements To The Patent Office Were Legal Arguments About How
>> The Yamaoka Patent Should Be Interpreted, And Legal Arguments
>> Cannot Constitute Inequitable Conduct.
>>
>> 2) Mr. Hsia's Testimony Is Also Not Necessary Because Of The
>> Availability Of Other Witnesses Or Documentary Evidence By Which
>> The Matters Asserted May Be Independently Established.
>>
>> 3) TPI Now Claims Mr. Hsia's Testimony Is Necessary To Prove
>> That The Kowalski 'Patent Is Unenforceable And Invalid, But TPI
>> Earlier Represented To The Court That This Case "Pertains Solely To
>> the [Yamaoka] '619 Patent" So "There Will Not Be Any … Reason
>> For This Court To Interpret The Kowalski Patent."
>
> B. The Testimony Sought Concerns Uncontested Matters – The Files Of
> The Patent Office Show The Statements That Were Made To the Patent
> Office And That The Patent Office Was Provided With Copies Of The
> Yamaoka Patent And Other Art Cited By Mr. Hsia.
>
> C. Disqualification Would Work Substantial Hardship On HISI And Mr.
> Kowalski.

D.  Movant Has Waived Any Right To Seek Disqualification Because Of Its Delay In Seeking Disqualification.

E.  Movant's Counsel  Should Be Sanctioned By Having To Pay HISI's and Mr. Kowalski's costs In Opposing This Motion.

## II. DISCUSSION

Rule 3.7 of Hawaii's Rules of Professional Conduct provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

> (1)  the testimony relates to an uncontested issue;

> (2) …

> (3)  disqualification of the lawyer would work substantial hardship on the client.

(b)  A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9 [which mainly deal with conflicts with other clients]. **[Thus, even if, contrary to fact, Hsia was a necessary witness, that would not result in disqualification of Yasunaga or Cades Schutte, as they would not be precluded from remaining as counsel by Rule 1.7 or Rule 1.9.]**

(Compared to the older disciplinary rules, "the new, liberal Model Rule 3.7 …

give[s] a greater recognition of the important of the client's own judgment

concerning his choice of counsel to represent him." Brown v. Daniel, 180 F.R.D.

298, 301 (D.S.C. 1998).)

**"Disqualification is a drastic step which should be avoided if possible."**

Ross v. Great Atlantic & Pac. Tea Co., Inc., 447 F.Supp. 406, 409 (D.C.N.Y.

1978).  "In addition to causing unnecessary delay, disqualification often deprives a

party of his chosen legal advisor." Guillen v. Chicago, 956 F.Supp. 1416, 1421

(N.D. Ill. 1997). "[A] party's right to representation by the attorney of his choice

… is a valued right and any restrictions must be carefully scrutinized." S&S Hotel

Ventures v. 777 S.H. Corp., 69 N.Y.2d 437, 443 (1987).

"The Disciplinary Rules … are not per se mandates calling for literal

application. On the contrary, even where a Disciplinary Rule is by its terms

applicable, [the court] must examine the facts of a claimed violation of the Code

and attempt to shape a remedy which will assure fairness to the parties and

integrity to the judicial process." Ross, 447 F.Supp. at 409.

Furthermore, as held in Chuck v. St. Paul Ins., 61 Haw. 552, 559 (1980):

> **[Disqualification] should not be decided on the basis of general and
> conclusory allegations.** It does not follow that [an attorney] ought to be
> called as a material witness … simply because of [his] participation in the
> negotiations [or other transaction at issue]…. [T]he trial court clearly erred
> in disqualifying [the attorney] on the basis of the [conclusory and general]
> affidavit. It should have based its determination on a "considered evaluation
> of all pertinent factors, including the significance of the matter to which he
> might testify, the weight his testimony might have in resolving such matters,
> and **the availability of other witnesses or documentary evidence by
> which these matters may be independently established.**"

"In addition, because motions to disqualify are often made for tactical

purposes, they are **disfavored and subject to strict scrutiny.** The **proponent of

disqualification bears a 'heavy burden' of proof to show that counsel's

testimony is necessary.**" Ball v. A.O. Smith Corp., 321 B.R. 100, 112 (N.D.N.Y.

2005).

Kowalski and HISI have no intention of calling Mr. Hsia as a witness, and he is certainly not a necessary witness.

TPI has failed to carry its heavy burden of showing that counsel's testimony is necessary or that disqualification will not work substantial hardship. TPI has relied only upon general and conclusory allegations, which are insufficient. Moreover, TPI's representations to the Court are false, as proven by TPI's own prior contrary representations to the Court, and as proven by clear law.

## A. TPI HAS NOT MET ITS HEAVY BURDEN OF SHOWING THAT MR. HSIA IS A NECESSARY WITNESS.

"[D]isqualification turns on more than the fact that an attorney of record might be called as a witness. **[T]he mere fact that an attorney was involved in a transaction at issue, or that his proposed testimony would be relevant or even 'highly useful,' is insufficient to warrant disqualification.** (fn 17 … 'the 'test … turns on more than the fact that [a party] intends to call [the attorney] as a trial witness.') [T]he **critical question is whether the subject testimony is 'necessary,' taking into account such factors as 'the significance of the matters, weight of the testimony, and <u>availability of other evidence</u>.**" <u>Ball</u>, 321 B.R. at 112).

**1) TPI Asserts That Mr. Hsia's Testimony Is Needed For TPI's "Inequitable Conduct" Defense, But It Is Clear That TPI's Inequitable Conduct Defense Fails As A Matter Of Law Because Mr. Hsia's Statements To The Patent Office Were Legal Arguments About How The Yamaoka Patent Should Be <u>Interpreted, And Legal Arguments Cannot Constitute Inequitable Conduct.</u>**

TPI's asserts that Martin Hsia's testimony is needed to prove TPI's defense of "inequitable conduct" (notwithstanding the fact that, as shown in subsection 3, TPI has never pled an inequitable conduct defense). TPI asserts that the basis of its inequitable conduct defense is that "Martin Hsia and Kowalski actively misled the USPTO" by "<u>mischaracterization</u> of Yamaoka's method" as "imparting an agreeable smoked taste", whereas TPI argues that Mr. Hsia and Mr. Kowalski should have characterized or interpreted the Yamaoka patent as disclosing a

method "creating 'tasteless smoke'" so that "no smoke taste or odor was imparted to the meat." TPI's Memorandum In Support of Motion (TPI's Memo) at 9, 10. However, it is clear that TPI's inequitable conduct defense fails as a matter of law because it is based on Mr. Hsia's statements to the Patent Office which were legal arguments about how the Yamaoka patent (full copies of which were provided to the Patent Office) should be interpreted, and legal arguments cannot constitute inequitable conduct. Thus, because TPI's inequitable conduct defense fails as a matter of law, Mr. Hsia's testimony on that defense cannot be necessary.

The law is very clear that legal arguments about how prior art (e.g., earlier patents) should be interpreted or characterized or distinguished – regardless whether the arguments are wrong or correct, asserted or not asserted -- cannot as a matter of law constitute inequitable conduct.

For example, in <u>Purdue Pharma L.P. v. Boehringer Ingelheim GmbH</u>, 98 F.Supp.2d 362, 393 (S.D.N.Y.,2000), aff'd and remanded, 237 F.3d 1359 (Fed. Cir. 2001), it was held (emphasis added):

> **[T]he duty of candor and the doctrine of inequitable conduct pertain only to the disclosure of factual information and not to the raising of legal arguments….** [T]he mere failure to raise a legal point cannot give rise to inequitable conduct…. As a policy matter, moreover, **it would make little sense to penalize parties for raising or failing to raise particular legal arguments; such penalties could unduly burden a party with having to pose hypothetical objections to its own legal position, and the Patent Office is undoubtedly competent to determine and to apply the law in proper fashion, <u>regardless</u> of what legal arguments a party does or does not raise.**

Thus, the law does not "penalize" Mr. Hsia for "raising" the argument that the

Yamaoka patent did not teach tasteless smoke or for "failing to raise [TPI's] legal

argument" that the Yamaoka patent arguably did teach tasteless smoke – "the

Patent Office is undoubtedly competent to determine" for itself what the Yamaoka

patent actually taught, "regardless of what legal arguments a party does nor does

not raise."

      The case of <u>Environ Products, Inc. v. Total Containment, Inc.,</u> 951 F.Supp.

57, 61 (E.D.Pa. 1996), explained that the inequitable conduct defense requires

failure to disclose "material information", but "material information" is different

from -- and does <u>not</u> include -- legal arguments:

> For a defense of inequitable conduct to succeed, there must be **clear and convincing proof** of (1) material prior art or information; (2) applicant's knowledge of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information because of an intent to mislead the PTO ["Patent and Trademark Office"].... PTO regulations, in relevant part, define "material information" as information which "refutes, or is inconsistent with, a position that the patent owner takes in [a]sserting an argument of patentability." <u>37 C.F.R. § 1.555(b)</u>. TCI apparently seeks to ... include[e] "legal argument" within the definition of "material information."…. I disagree. **I can find no case holding that "material information" includes legal interpretation**…. Further, **there is no policy reason which would support the unprecedented expansion of the interpretation of "material information" to include legal arguments.**

(Note, <u>Environ</u> speaks of "clear and convincing proof" because inequitable conduct

is fraud, and TPI cannot even come close to meeting such a burden.)

      Also right on point is <u>Azko v. U.S. International Trade Commission</u>, 808

F.2d 1471, 1481-82 (Fed. Cir. 1986), a decision of the Federal Circuit Court, which

is the special appeals court for patent cases:

> Du Pont's affidavit or **arguments before the examiner did <u>not</u> constitute
> material misrepresentations**. [T]he examiner had both the Morgan '645
> patent and the Kwoleck '542 patents before him throughout the examination
> process.... The mere fact **that Du Pont attempt**ed **to distinguish the
> Blades process from the prior art does not constitute a material
> omission or misrepresentation. The examiner was free to reach his own
> conclusion regarding the Blades process based on the art in front of
> him. Nor does Du Pont's affidavit advocating a particular
> interpretation of the Morgan '645 and Kwoleck '542 patents (albeit
> favorable to Du Pont's position) show any intent to mislead the PTO.**

The holding of the Federal Circuit in <u>Azko</u> precisely fits the situation here, as

shown by inserting the names Hsia, Kowalski, and Yamaoka:

> The mere fact that [Mr. Hsia] attempted to distinguish the [Kowalski]
> process from the [Yamaoka patent] prior art does not constitute a material
> omission or misrepresentation [because] The examiner was free to reach his
> own conclusion regarding the [Kowalski] process based on the art in front of
> him. Nor does [Mr. Hsia's] affidavit advocating a particular interpretation
> of the [Yamaoka '619] patent (albeit favorable to [Kowalski's] position)
> show any intent to mislead the PTO.

> This law is so clear that it is stated in patent treatises, such as John

Gladstone Mills II & Donald Cress Reiley, III, <u>Patent Law Fundamentals</u> §15:78

(2d ed. 2006):

> **A distinction should also be drawn between a submission to the [Patent]
> Office of facts, on one hand, and submission to the Office of arguments
> or legal conclusions that can be drawn from such facts, on the other
> hand.** Thus, where information is before the Office which the examiner
> could use to reject [the patent application] under 35 U.S.C.A. §102(e), that
> the applicant did not advise the examiner that such information constituted
> prior art under 35 U.S.C.A. §102(e) was deemed not to amount to

inequitable conduct. As the court stated: "As a policy matter, moreover, it would make little sense to penalize parties for raising or failing to raise particular legal arguments; ... the Patent Office is undoubtedly competent to determine and to apply the law in proper fashion, <u>regardless</u> of what legal arguments a party does or does not raise."

Kowalski, in applying for his patent, disclosed the Yamaoka '619 patent to the Patent Office and provided the Patent Office with a copy of the Yamaoka '619 patent. See Exhibit 1, a certified copy of Kowalski's Information Disclosure Statement, which states on page K265 "The inventor would like to bring the examiner's attention to the following U.S. patents," and then lists the Yamaoka '619 patent, among others. See Exhibit 2, a certified copy of the Yamaoka patent sent to the PTO by Kowalski and kept in the PTO's files re the Kowalski patent, upon which appear the examiner's own tic marks, which further prove he read the Yamaoka patent himself to verify whether Kowalski's arguments were correct.

In re Portola Packaging, Inc., 110 F.3d 786, 790 (Fed. Cir. 1997), confirms that TPI clearly has no claim of fraud because the arguments of the applicant cannot be inequitable conduct because a patent examiner is required to carefully analyze for himself the prior art cited and presented to him:

> The regulations that prescribe an examiner's conduct indicate that, in conducting an examination, an examiner must evaluate each cited reference and then determine which of those references, alone or in combination, provides the most appropriate statutory ground for rejecting the claims [in the patent application].... Therefore, it must be presumed that the original examiner considered the Faulstich and Hunter patents ... before allowing the original claims.

... [G]overnment officials are presumed to have "properly discharged their official duties." If the references were in front of the examiner, it must be assumed that he or she reviewed them.

The patent examiner clearly did in fact read the Yamaoka patent, as proven by his initials "DEB" on page K267 of Exhibit 1, including next to the listing of the Yamaoka patent, which is the 6th entry under the title "U.S. Patent Documents - - the instructions on that form, right under the examiner's signature, state "Examiner:  Initial if reference considered ...." A clearer copy of those instructions explaining that the examiner's initials mean that he reviewed the Yamaoka patent himself is set forth in the sample form in Exhibit 3, which exhibit consists of pertinent pages from the Patent Offices Manual of Patent Examining Procedure, which also show that the examiner analyzes the prior art on his own, as opposed to simply relying on whatever the applicant argues about how that prior art should be interpreted:

> (d)  A copy of any patent ... or other information ... listed in an information disclosure statement is required to be provided ....
>
> An information disclosure statement ... will be considered by the examiner assigned to the application. Individuals ... are encouraged to submit information to the Office so the examiner can evaluate its relevance to the claimed invention....
>
> The examiner must consider all the prior art references (alone or in combination) cited in the application ..., including those cited by the applicant in a properly submitted Information Disclosure Statement.

The Office Action Summary written by examiner Drew Becker and his supervisor David Lacey (Exhibit 4) is further proof that they read the Yamaoka

patent themselves because their citations therein are to specific columns and lines of the Yamaoka patent to back up their analysis, and note that those citations coincide with many of the tic marks they placed on Ex. 2, their copy of the Yamaoka Patent.  In their Office Action Summary (Ex. 4), the examiner and supervisor concluded on their own and in their own words **"Yamaoka et al does <u>not</u> teach the concepts of producing smoke [and] superpurifying the smoke in order to make it tasteless,"** which is further confirmation that TPI's current claim of fraud on the Patent Office is ridiculous.

TPI's assertion at page 10 of its memorandum that the statement in the Kowalski patent application about the Yamaoka patent "is critical as it was on this basis alone that the USPTO examiner allowed the '401 patent to issue" is false – as shown by all the above proof and authorities, the examiner's basis for allowing the Kowalski patent to issue was the examiner's (and his supervisor's) own analysis of the Yamaoka patent from his own review of that patent – he did not simply rely upon Kowalski's proposed interpretation of the Yamaoka patent and cannot have been tricked by any such proposed interpretation because the examiner had the Yamaoka patent in front of him and was free to read and interpret it for himself, must be presumed by law to have done so, and in fact clearly did.  (In any event, as shown above, arguments about prior art cannot constitute inequitable conduct.)

Likewise, TPI's assertion that "Hsia put words into Yamaoka's mouth" is

ridiculous because Mr. Hsia presented the Patent Office examiner and supervisor with a copy of the Yamaoka patent so they could see for themselves what the Yamaoka patent said and they concluded from their own review of the Yamaoka patent that it "does not teach the concepts of producing smoke [and] superpurifying the smoke in order to make it tasteless." (Ex. 4)

This conclusion of the examiner and supervisor that the Yamaoka patent does not teach tasteless smoke was clearly correct and well-supported, given that the Yamaoka Patent states: "The smoked fish and meat **pick up** agreeable taste" (Ex. 2, Abstract), "the object of this invention is to keep fish and meat fresh and **impart** agreeable **taste and smell** thereto by applying smoking" (Ex. 2, Col. 1, Ln. 38-40), "**impart** agreeable taste and smell without losing the freshness" (Ex. 2, Col. 2, Ln. 8-9), "**the smoke imparts** agreeable taste and smell to the processed fish and meat while keeping them in a substantially fresh condition" (Ex. 2, Col. 3, Ln. 25-27 – how can TPI with a straight face argue that Yamaoka taught tasteless smoke when that patent states that "the smoke imparts agreeable taste and smell" – "imparts" means "gives", so it is saying the smoke gives a taste to the food), "The aromatic **smell characteristic of smoked products** can be easily **raised**" (Ex. 2, Col. 7, Ln. 4-5 – this statement shows that Yamaoka, rather than teach tasteless smoke, was actually teaching the opposite, because it speaks of raising the smell characteristic of smoked products); "remove mainly tar" (Ex. 2, Col. 8, Ln. 2-

3)(removing only tar will not render the smoke tasteless, because that would still leave unfiltered the main taste causing components in smoke – the aromatic phenols).

Thus, U.S. District Court Judge David E. Ezra was on proper grounds when he concluded in his June 8, 2005 order (Ex. 5) in CV5-63, "Kowalski's patent protects a process he invented that uses **'tasteless' smoke** to both preserve seafood and meat and maintain the food's natural color throughout the process of freezing and thawing **without changing the flavor of the fish.** [Mr. Yamaoka's assignee] Tuna Processors' patent protects a process invented by Mr. Kanemitsu Yamaoka, one of [the] shareholders of Tuna Processors, that uses smoke – albeit not 'tasteless' smoke – to preserve fish and maintain its color **while imparting a smokey flavor.**"

Desperate to raise a fraud claim were it is clear none exists, TPI goes on to suggest that Mr. Hsia defrauded the Patent Office because "Hsia did not provide the entire sentence quoted from Yamaoka's [attorney's] response" to the Patent Office made back in 1995 when Yamaoka was applying for the Yamaoka patent. TPI's statement is false and misleading because, as TPI well knows from its having obtained a copy of the Kowalski patent file, Mr. Hsia did in fact provide the Patent Office with, not just the entire sentence, but a copy of the entire Yamaoka response that contained that sentence, and that document was attached to Mr. Hsia's memo

in which he discussed that Yamaoka response and directed the examiner to review it – see 2nd to last page of Exhibit 6 (Mr. Hsia's Petition to Make Special and the Yamaoka document attached to it, both being certified copies of the Patent Office's file on the Kowalski patent application).  (Actually, two copies of the Yamaoka response were presented to the Patent Office, one attached to a March 1998 Petition to Make Special, and another attached to the July 1998 Petition to Make Special (as explained in 2nd para. of first page of Exhibit 6).  Again, an applicant's argument about or proposed interpretation of an earlier patent or other document cannot be fraud, especially when the applicant gives the Patent Office a copy of the document being discussed.  (Aside from the fact that the Patent Office had the entire document to review for itself and was asked to do so, not requoting the entire sentence was immaterial because all that was left out was a legal conclusion by Yamaoka's attorney, which is not a fact and therefore cannot be a fraudulent omission.  Furthermore, that part of the sentence was irrelevant to the Kowalski patent application and was properly left out.  That part of the sentence dealt with the issue of whether patents older than the Yamaoka patent application should have prevented Yamaoka from getting a patent on the ground that the pre-Yamaoka patents "render obvious" Yamaoka's invention.  It would make no sense for Mr. Hsia to quote that part because he and the examiner were dealing in 1998 with Mr. Kowalski's patent application, so the issue then was not whether the pre-Yamaoka

patents rendered Yamaoka's invention obvious, but whether the Yamaoka patent rendered the Kowalski invention "obvious" or "anticipated" the Kowalski invention (prior art rendering the applicant's method obvious or anticipating it are two possible grounds upon which a patent application might be rejected).

TPI argues that Mr. Hsia's testimony is needed to show that the "best mode" requirement was violated, but this argument fails because this is just another form of TPI's argument that Mr. Hsia's legal argument about the Yamaoka patent was wrong. The best mode requirement is that the applicant's patent application disclose to the Patent Office what he believes to be the best way of practicing his invention, as of the time the application is filed. TPI now argues that the Yamaoka patent actually taught tasteless smoke and that it constituted the best mode of the tasteless smoke process, and Mr. Hsia and Mr. Kowalski failed to reveal that best mode to the Patent Office. However, this defense fails as a matter of law for the same reasons set out above. First, Mr. Hsia and Mr. Kowalski did in fact reveal the Yamaoka patent to the Patent Office – they provided the Office with a copy (Ex. 2) , so they cannot as a matter of law be found to have concealed the best mode. Thus, as stated in Patent Law Fundamentals §13:16, one of the three requirements for finding a violation of the best mode requirement is "(2) Was there concealment of material information about the best mode? If not, the inquiry is ended and the best mode requirement has been satisfied." As shown by this quote,

the requirement is only that the "material information" be disclosed, and arguments such as characterizations or interpretations of the Yamaoka patent are not "material information" – the material information was the Yamaoka patent itself, and that was disclosed, so there can be no violation of the best mode requirement even if one assumes, falsely, that the Yamaoka patent taught the tasteless smoke process.

Second, although cast in terms of "best mode", this is really just the same argument by TPI that the Yamaoka patent arguably should have been interpreted differently than Mr. Kowalski, the Patent Office, other foreign patent offices, and Judge Ezra interpreted it (i.e., that the Yamaoka patent did not teach tasteless smoke). As shown above, a party cannot be faulted for advocating or failing to raise a particular legal argument or interpretation of a prior patent when that prior patent is mentioned in the patent application and provided to the Patent Office.

Another attempt by TPI to mislead this Court is its attaching an alleged 1998 affidavit of Charles Cardile as its basis for arguing "The process of obtaining tasteless and odorless smoke from burning woodchips has been established before Kowalski applied for his patent." TPI Memo at 9. First, the statement is false because Mr. Cardile's "affidavit" claims to have seen "tasteless and odorless smoke" at the Pesca Rich factory on "February 19, 1998," whereas the Kowalski patent was applied for before that – the provisional application was filed on March 12, 1997. See the last page of Exhibit 7, hereto, which is the first page of the

Kowalski patent.  Second, the Cardile statement does not prove in any way that

Mr. Hsia made any misrepresentation or omission because there is no indication

that Mr. Hsia had any knowledge of the matter to which Mr. Cardile's affidavit

refers – Mr. Cardile was a private consultant hired by Pesca Rich, whose owner

was Mr. Yamaoka and whose President was Mr. Friend, so Mr. Cardile is hardly a

credible or neutral witness.  Third, as was shown by depositions in the Hilo Fish

case and in the press, Pesca Rich was tricking the government when it showed the

government its smoke machine, because Pesca Rich was actually using chemical

carbon monoxide gas.  See, e.g., Exhibit 8, a news article.  Fourth, the duty of

candor is to disclose known prior art, and Pesca Rich's practicing of a process in

secret is not prior art because prior art must be a public disclosure of how to

practice a process, and in the Hilo Fish case, Mr. Friend testified in 2001 that Pesca

Rich kept secret the details of its process because it did not want any competitors

to be able to use that process (see Exhibit 9, excerpts of Mr. Friend's deposition).

Fifth, TPI also is trying to mislead the Court into thinking that the Kowalski patent

can be defeated by evidence that arguably shows someone invented tasteless

smoke before Kowalski, but that is not true because, even if one assumed Pesca

Rich invented tasteless smoke first, Pesca Rich's admission that it was "trying to

camouflage our smoking process so that they don't – our competitors will not be

able to copy our technique" prevents any alleged earlier invention from defeating

Kowalski's patent because an earlier inventor cannot defeat a later inventor if the earlier inventor kept secret the means of practicing the invention.  <u>E.g., Gore, Inc. v. Garlock, Inc.</u>, 721 F.2d 1540, 1550 (Fed. Cir. 1983) ("Early public disclosure is a lynchpin of the patent system, [so] as between a prior inventor who benefits from a process by selling its product but suppresses, conceals, or otherwise keeps the process from [being used] by the public, and a later inventor who promptly files a patent application from which the public will gain a disclosure of the process, the law favors the latter.").

TPI also makes the vague and conclusory statements:  "misuse of the '401 patent.  Also at issue is discriminatory and anti-competitive licensing and attempts to license the patent".

None of these general and conclusory statements are sufficient to show Mr. Hsia is a necessary witness.  As stated in <u>Chuck v. St. Paul Ins.</u>, 61 Haw. 552, 559 (1980), **disqualification "should not be decided on the basis of general and conclusory allegations."**  <u>Also, Optyl Eyewear Fashion Intn'l Corp. v. Style Companies, Ltd.</u>, 760 F.2d 1045, 1049 (9th Cir. 1985)(**"mere allegations of impropriety are insufficient to compel withdrawal"**).  **There has been no showing that these are more than mere allegations or that Mr. Hsia's testimony regarding any of these things is necessary as opposed to being cumulative of other testimony or evidence.  In fact, there has been no showing**

**that Mr. Hsia played any role in or knows anything about any of these things. The strict scrutiny burden has certainly not been met by TPI, and it seems that, rather than having any legitimate grounds to even raise disqualification, TPI's counsel is just trying to throw up anything in the hope it can trick the Court into crippling HISI and Kowalski by depriving them of the counsel that have worked with them for a decade and about 20 lawsuits.**

It is so clear for all these reasons that the assertion of TPI that the Kowalski patent was obtained by fraud and inequitable conduct is bogus, that one must question TPI's integrity and good faith in spreading those assertions to the industry, the courts, and Philippine government officials and in bringing this motion.  As the alleged defenses so clearly fail, the assertions that Mr. Hsia must be a witness regarding these matters and that Cades Schutte is "a defacto defendant" or in a conflict of interest with Mr. Kowalski are also false. (Furthermore, TPI's entire conflict argument is incorrect.  A conflict between the attorney and client is not proved just because it is possible that, if the attorney's legal arguments to the Patent Office are later disagreed with by the court, the client will be in a worse position than if the court ends up agreeing with attorney's arguments, or if the court might later invalidates the patent because the application failed to state material information.  A conflict of the type relevant for disqualification considerations is where the attorney must testify and his testimony

will contradict the client's testimony on a key issue.  E.g., Coolsavings.com v. E-Centives, Inc., 2000 WL 1262929 (N.D.Ill. 2000)("Whether the outcome will be prejudicial or adverse to the client if the trier of fact finds the material [information] was deliberately withheld from the PTO misstates the standard for prejudice.  Rather, the court should have considered whether the attorney's testimony 'would contradict or undermine his client's factual assertions.'"  TPI has not presented any evidence indicating that Mr. Hsia's testimony is necessary, let alone contradictory of any factual assertions made in this case by Mr. Kowalski.")

TPI cites Crossroads Systems Inc. v. Dot Hill Systems Corp.; 2006 U.S. Dist. LEXIS 36181 (W.D. Tex. 2006), but that case has no relevance here because that case involved a defendant that invoked the "advice of counsel" defense and listed one of its attorneys to testify in support of that defense, whereas neither HISI nor Kowalski have invoked such a defense or listed any of its attorneys as a witness.  Furthermore, that case has been disagreed with by other courts.[1]

---

[1] A finding that infringement was "willful" can lead to treble damages, and the advice of counsel defense is used to argue that, if the defendant is found to have infringed the patent, such infringement should not be deemed willful because the defendant reasonably relied upon the "advice of counsel" in a formal opinion letter that led the defendant to believe that its activities were not infringing.  The court in Crossroads found disqualification would not be a hardship because "A fact of great significance in this case … is that the disqualification of Morgan & Finnegan will not leave Dot Hill without counsel of its choosing but will simply cut down the number of firms rep[resenting it from three to two."  Id. at 31, fn. 2.  (This is another reason Crossroads is inapposite.)  The Court granted the disqualification motion because the alleged infringer "stated firmly" that it would rely on its

ImanageDB:666827.1

### 2) Mr. Hsia's Testimony Is Also Not Necessary Because Of The Availability Of Other Witnesses Or Documentary Evidence By Which The Matters Asserted May Be Independently Established.

Aside from the above points, **Mr. Hsia is not a necessary witness because his representations to the Patent Office are set forth in the Patent Office's file (also called the "file wrapper") regarding the application of the Kowalski patent.** See, e.g., Techtronics Proprietary, Ltd., v. Medtronic, Inc., 836 F.2d 1332, 1337 (Fed. Cir. 1988)("**Rackman's testimony was not required ... because the file wrapper contains all pertinent information required ....**"). (In Techtronics, the attorneys had worked on the patent application, but were nevertheless allowed to represent in the litigation the party that was trying to invalidate that very patent.) [2] Thus, whether Mr. Hsia's statements to the PTO are correct or incorrect is not

---

attorney's testimony to prove the advice of counsel defense. Id. at 27. It should be noted that other courts have disagreed with Crossroads on this and have held that, even where the "advice of counsel" defense is relied upon, the attorney need not testify about his opinion letter because what counts is not what the attorney's thought processes were, but whether the opinion letter, on its face, was sufficient to lead the client reading it to reasonably believe it was not infringing. E.g., Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 2000 WL 1006235 (S.D.N.Y. 2000)("Opinion letters should be reviewed to determine whether they evidence an adequate foundation ... or whether they are conclusory on their face.... Thus, ... the issues are limited to "was there reasonable reliance [on the letter] by [client] Bristol? Bristol's management witnesses are the proper parties to be examined on that subject, not Mr. Baechtold [the attorney who wrote the opinion letter].").
[2] The Federal Circuit said in Techtronics, 836 F.2d at 1336, that a "restrained approach" was proper regarding attorney disqualification, "thus, with rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflicts of interests ... undermines the court's confidence in the vigor of the attorney's representation of his client ... or more commonly (2)

determined by talking to Mr. Hsia, but by the court's reading the Yamaoka patent

and seeing whether it agrees with Hsia/Kowalski's or TPI's interpretation of the

Yamaoka patent (the PTO and Judge Ezra read the Yamaoka patent and came to

the same conclusion stated by Hsia/Kowalski).   Many other courts have recognized

that the disqualification of counsel is improper where the sought-after testimony

may be obtained from other sources, including the testimony of the parties, their

witnesses, and Patent Office's files and other documents.  E.g., Gaull v. Wyeth

Laboratories, Inc., 687 F.Supp. 77, 81 (S.D.N.Y. 1988)("disqualification is

inappropriate … since **Mr. Moran is not a necessary witness…. The Court**

**finds that his testimony, where relevant to the issues  of this case would be**

**merely cumulative to the written record of the interview with the Examiner**

**which is part of the Patent Office's file**, and to [the inventor] Dr. Gaull's

testimony."); U.S. v. Ben Franklin Bank, 2003 WL 21476020 (N.D.Ill. 2003) ("As

to the necessity of the counsel's testimony, **an attorney who participates in a case**

**should <u>not</u> be called as a witness absent extraordinary circumstances or**

**compelling reasons and where the evidence is not easily available from other**

**sources**."); Ross v. Great Atlantic & Pacific Tea Co., 447 F.Supp. 406, 409-10

(S.D.N.Y. 1978)(" defendant can readily introduce the substance of plaintiffs'

---

where the attorney is at least potentially in a position to use privileged information
concerning the other side through prior representation, … thus giving his present
client an unfair advantage."  Neither applies in the present case.

$70,000 admission without the testimony of Mr. Ross.  For example, the defendant might place before the jury the complaint drafted by Mr. Ross ….").

**Note, <u>Techtronics</u> and <u>Gaull</u> prove that an attorney is not disqualified from being trial counsel merely because he helped apply for the patent.**

Furthermore, TPI cannot get privileged information from Mr. Hsia, so it cannot use such information as a basis for claiming it needs his testimony.  <u>E.g.,</u> <u>Mitts & Merrill, Inc. v. Shred Pax Corp.</u>, 112 F.R.D. 349, 354 (N.D.Ill. 1986)("Mitts [the client] cannot be required … to waive its privilege with respect to [its attorney's] oral testimony.  Without his privileged testimony, there is simply nothing [the attorney] could conceivably be questioned about that would be prejudicial to his client.  Under the language of the new rules, he is thus not a "necessary" witness.  The motion as to … disqualification … fails….").

### 3) TPI Now Claims Mr. Hsia's Testimony Is Necessary To Prove That The Kowalski 'Patent Is Unenforceable And Invalid, But TPI Earlier Represented To The Court That This Case "Pertains Solely To the [Yamaoka] '619 Patent" So "There Will Not Be Any … Reason For This Court To Interpret The Kowalski Patent."

The motion to disqualify is brought by TPI in this case (CV5-517), which is the case wherein TPI is the plaintiff bringing claims against HISI for HISI's alleged infringement of the Yamaoka '619 patent, which TPI claims to own (see Complaint – Exhibit 7).  This case does not contain any claims for infringement of the Kowalski '401 patent, so there is no need for TPI to raise the defense that

inequitable conduct prevents the Kowalski patent from being enforced – and TPI
has not asserted any inequitable conduct defense (see Ex. 7).  In its motion to
disqualify, TPI now tells the Court that testimony from Mr. Hsia is necessary in
this case to show the Kowalski '401 patent was obtained through
misrepresentations and therefore the Kowalski patent is unenforceable and invalid
on the grounds of alleged inequitable conduct.  However, TPI's representation that
it needs Mr. Hsia to testify in this case about the Kowalski '401 patent is clearly
bogus because TPI in earlier pleadings represented to the Court that this case
"pertains solely to the [Yamaoka] '619 patent" and HISI's infringement thereof,
and so "there will not be any opportunity or reason for this Court to interpret the
Kowalski patent."  See Ex. 10 – relevant pages of TPI's Amended Memorandum
In Opposition to HISI's Motion To Dismiss, Transfer Or Stay, filed April 7, 2005
in this case before it was transferred from Michigan (prior to transfer, this case was
numbered 4-74843).  This complete inconsistency shows that the motion to
disqualify is yet the latest of TPI's efforts to harass and gain unfair advantage over
HISI and Kowalski with needless expense (such asTPI's filing of this case in
Michigan despite TPI's lack of contacts with Michigan) and TPI's unethical
tactics, such as its using gangsters/yakuza to illegally disrupt HISI's financing so
as to "pressure Kowalski to settle with TPI, in terms favorable to TPI" and to
"neutralize Bill" Kowalski.  See Ex. 11, October 2005 email among TPI's

Chairman Joaquin Lu, President Dick Alves and Vice President Richard Friend.

That Mr. Hsia's testimony about the Kowalski patent is not necessary is also confirmed by the law regarding how infringement is established. As mentioned, this case involves TPI's claim that HISI infringed the Yamaoka patent. To determine whether the Yamaoka patent was infringed, one must look at the claims of the Yamaoka patent and see whether the process used on HISI's fish falls within all elements of any claim of the Yamaoka patent. Phillips v. AWH Corp., 415 F.3d 1303, 1312, 1323-24 (2005). Thus, one does not determine this case's claim of infringement of the Yamaoka patent by comparing the Yamaoka patent to another patent, such as the Kowalski patent, or by studying whether or not HISI's fish falls within another patent, such as the Kowalski patent. It is possible for more than one patent to apply to a single product, so determining whether the Yamaoka patent is infringed requires analyzing that patent, rather than analyzing the Kowalski patent. Vaupel Textilmaschinen KG v. Meccanica Euro Italia, 944 F.2d 870, 879 (Fed. Cir. 1991("**the existence of one's own patent does not constitute a defense to infringement of someone else's patent**"). **Thus, Mr. Hsia's testimony regarding the Kowalski patent application cannot be necessary to this case, which concerns whether or not the <u>Yamaoka patent</u> – not the Kowalski patent -- is valid and enforceable.**

**Further evidence of TPI's bad faith in bringing this motion is that, in**

**TPI's Initial Disclosures filed on October 31, 2005 (Exhibit 12), TPI did not list Mr. Hsia as an individual likely to have discoverable information, even though TPI knew long before then that Mr. Hsia was the attorney for the patent application (see page of Kowalski patent attached to TPI's 2004 complaint – Exhibit 7).**

## B. THE TESTIMONY SOUGHT CONCERNS UNCONTESTED MATTERS – THE FILES OF THE PATENT OFFICE SHOW THE STATEMENTS THAT WERE MADE TO THE PATENT OFFICE AND THAT THE PATENT OFFICE WAS PROVIDED WITH <u>COPIES OF THE YAMAOKA PATENT.</u>

It is clear from the files of the Patent Office what Mr. Hsia provided and argued to the Patent Office, so his testimony is not required and, if obtained, would only address the uncontested matters of what he provided and argued (privileged matters could not be discovered, as shown above). Therefore, his testimony would fall within the Rule 3.7's exception for uncontested matters.

## C. DISQUALIFICATION WOULD WORK SUBSTANTIAL <u>HARDSHIP ON HISI AND MR. KOWALSKI.</u>

A clearer case for application of the third exception to Rule 3.7 -- the exception where disqualification would "work substantial hardship" -- can hardly be imagined. Mr. Hsia, Mr. Yasunaga, and Cades Schutte have represented Mr. Kowalski and his company HISI for about a decade (about 7 years for Yaunaga), involving over 25 U.S. and foreign patents starting in 1996 and about 20 court cases, starting in 2000, and involving many thousands of hours of legal work. Ten

of the court cases were settled or otherwise resolved by these attorneys after

extensive mediations and negotiations,[3] and most of those settlements involve

ongoing licenses and/or other ongoing obligations such as injunctions and no-

challenge clauses, as this Court is well aware from its past experience, many of

these settlement agreements were complicated and involved and confidential, and

several of them related, which would make it even more difficult if not impossible

for new counsel to learn what existing counsel knows, especially given that the

clients – being an individual and a small company -- could not afford to educate

new counsel to learn what existing counsel knows.  TPI had a joint defense

agreement with Jana, and TPI's attorneys handled the defense of the Jana case, and

Kowalski and HISI obtained from Judge Ezra summary judgment against Jana on

inequitable conduct, best mode, and enablement defenses asserted by Jana and

TPI's counsel.  See Exhibit 12.  (Note, the arguments for inequitable conduct and

best mode asserted now by TPI are so weak that Jana and the counsel it shared

with TPI did not bother to raise those arguments, but instead raised arguments that

were deemed to be stronger, but nevertheless, Judge Ezra granted Kowalski and

HISI summary judgments on those arguments/defenses.)  Pending cases in which

---

[3] CV00-185 against Hilo Fish; CV2-832 against Phillips Foods; CV3-15 against
Jana Brands; CV3-460 against Seven Seas; CV4-103 against Orca Bay; CV4-52
against Taiwan Seafood; CV5-680 against East Asia and Trident; CV5-678 against
Angel Seafood; No. 02-9740 SJO in California against Seven Seas; and CV5-63
against TPI (dismissed on first to file rule).

Cades Schutte, Hsia and Yasunaga represent Mr. Kowalski and HISI involve the

present case against TPI – CV5-517; CV5-787 against SeaFriend and Friend; CV5-

679 against MGTR, LU, and King Tuna; CV6-182 against Citra Mina and Integral

Seafood; CV5-680 against Ocean and Alves; CV4-55 against Ocean Duke; CV4-

56 against Sea Port Products; CV4-80 against Asiana Management and its

suppliers; CV4-53 against Advanced Fresh Concepts; Philippine case 7566

(Frescomar and HISI against TPI).  Hundreds of thousands of documents have

been produced in this litigation and reviewed by present counsel, many depositions

were taken, work with and motions regarding experts has occurred, and

interrogatories were served, and most of these documents, depositions, and

interrogatory answers were designated as confidential under protective orders,

which again makes it impossible and cost prohibitive to have new counsel try to

obtain the knowledge possessed by existing counsel.  In this case, motions to

compel were filed and argued, interrogatories were served, many tens of thousands

of documents have been produced and reviewed.  Yasunaga and Kowalski

Declarations.

Disqualification would also work a substantial hardship because the large

number of infringers of the Kowalski patent has meant that a large number of

lawsuits have been filed – almost 20 in Hawaii – and an even larger number of

notices of infringement have been sent out since 2000, which resulted in every

attorney in Hawaii known to have any expertise with patents being already adverse to Kowalski and HISI, which makes obtaining new counsel in Hawaii (where most of the litigation is located) impossible.  Thus, it is not surprising that Mr. Kowalski states that he understands the disqualification issue but wants to retain Cades Schutte, Yasunaga, and Hsia as his counsel despite TPI's allegations of possible conflict and alleged usefulness as trial witnesses.  Yasunaga and Kowalski Declarations.

Case authority shows the substantial hardship exception applies here.  E.g., Brown v. Daniel, 180 F.R.D. 298, 301 (D.S.C. 1998)("To find 'substantial hardship,' courts have required something beyond the normal incidents of changing counsel, such as the loss of extensive knowledge of a case based upon a long-term relationship between the client and counsel and substantial discovery conducted ….  The case is quite complex with a remarkable set of detailed facts and an intricate time line.  During the eight-year span of representing Taylor and Brown, the Collins & Lacy firm has developed an intimate familiarity with the facts of the "Operation Lost Trust" investigation and prosecutions as well as the facts of the instant lawsuit. The firm has unique experience and extensive knowledge particular to the case, such that it would work substantial hardship to Brown to begin again with a new set of attorneys.  Consequently, the Court **DENIES** the motion.");  Lumbard v. Maglia, Inc., 621 F.Supp. 1529, 1540

(D.C.N.Y. 1985)("Disqualification would "work a substantial hardship" …. The

plaintiffs' counsel has worked closely with the Meritum Trustee since his

appointment. Cleary served as the Meritum Trustee's counsel during his year long

investigation and supervised the substantial discovery that uncovered the evidence

which formed the basis for the complaint in this action. It has since conducted

substantial additional discovery…. Plaintiffs' counsels' knowledge of the facts

underlying this suit is thus extensive and unique. Disqualification would work a

severe hardship on any litigant in these circumstances."); SMI Industries Canada

Ltd. V. Caelter Industries, Inc., 586 F.Supp. 808, 817 (N.D.N.Y. 1984)("an

attorney may continue representation of his client in a proceeding in which the

attorney is called upon to testify if disqualification would work a special and

unwarranted hardship on the client by virtue of the distinctive value of the lawyer

or his firm as counsel in the case. … George Limbach has represented the related

predecessor corporation of defendant in patent and trademark matters since 1967,

and the Limbach firm has represented defendant and its related companies since

early in 1968. The attorney-client relationship has become intimate, and the firm

has acquired specialized knowledge of defendant, defendant's related companies,

and their operations. The Limbach firm's representation of defendant in the

present action involves a complex set of legal and factual issues which the firm has

been familiar with for many years. At this late juncture it would work a substantial

hardship upon the defendant to require it to retain new counsel."); Alexander v.

Primerica Holdings, Inc., 822 F.Supp. 1099, 1117-18 (D.N.J.,1993).

### D.  MOVANT HAS WAIVED ANY RIGHT TO SEEK DISQUALIFICATION BECAUSE OF ITS DELAY IN SEEKING DISQUALIFICATION.

TPI filed this lawsuit in 2004, and knew from long before then that Mr. Hsia

was the attorney that filed the Kowalski patent application (see Exhibit 7, which is

a copy of the 2004 complaint herein, which attached a copy of the Kowalski

patent, which lists Mr. Hsia as the attorney filing the application).  From at least

2003, Richard Friend, Vice President and the only full time executive of TPI, was

complaining that Mr. Hsia's mischaracterized the Yamaoka patent as allowing the

smoke to impart an agreeable taste, as opposed to teaching tasteless smoke.  See

e.g., Exhibit 14, a December 17, 2004 letter by Mr. Friend referring to the August

8, 2003 memorandum (Exhibit 15) he sent to the Philippine Director of Patents, in

which he raised similar arguments to those raised in this motion, stating "during

prosecution of Kowalski's U.S. patent, specifically at page 4 of the declaration of

Kowalski's attorney Martin Hsia, the Yamaoka patent is mischaracterized as "…

allow[ing] the remaining smoke to impart an agreeable taste and smell, as noted

above."

By waiting almost two years after this lawsuit was filed in 2004 to raise an

argument that it knew of since at least a year before that, TPI has waived the right

to seek disqualification of Mr. Hsia or his law firm. <u>United Nuclear Corp. v.</u>

<u>General Atomic Co.</u>, 629 P.2d 231 (N.M., 1980)("A motion to disqualify opposing

counsel should be filed at the onset of the litigation …. A failure to act promptly

may warrant denial of the motion…. GAC's delay in raising the disqualification

issue … casts serious doubt on the good faith with which the motion was made.

GAC's motion to disqualify the Bigbee firm was filed after twenty months of

litigation with United."); <u>First Small Business Inv. Co. of California v. Intercapital</u>

<u>Corp.</u>, 738 P.2d 263, 270 (Wash.,1987)("The motion was properly denied by the

trial court on the basis of waiver alone. The moving parties had reason to know of

the existence of the basis for the potential disqualification for several years before

they filed their disqualification motion… This court will not allow a litigant to

delay filing a motion to disqualify in order to use the motion later as a tool to

deprive his opponent of counsel of his choice after substantial preparation of a case

has been completed."); <u>Central Milk Producers Coop. v. Sentry Food Stores, Inc.</u>,

573 F.2d 988, 992 (8th Cir.1978)(" Here appellants .. waited more than two years

after they knew Futterman had been hired to formally raise the issue"); <u>Trust Corp.</u>

<u>of Montana v. Piper Aircraft Corp.</u>, 701 F.2d 85, 88 (9th Cir. 1983); <u>Alexander v.</u>

<u>Primerica Holdings, Inc.</u>, 822 F.Supp. 1099, 1115-16 (D.N.J.,1993):

> In determining whether the moving party has waived its right to object to the
> opposing party's counsel, consideration must be given to (1) the length of the
> delay in bringing the motion to disqualify, (2) when the movant learned of
> the conflict, (3) whether the movant was represented by counsel during the

delay, (4) why the delay occurred and (5) whether disqualification would result in prejudice to the non-moving party…. In particular, consideration should be given and inquiry made as to whether the motion was delayed for tactical reasons….

In the case *sub judice,* the delay in bringing this motion to disqualify is both substantial and undue. Put simply, all facts which underlie this motion were known to Plaintiffs from the start of this litigation….

Courts have not hesitated to deny motions to disqualify brought after shorter periods of undue delay. *See, e.g.* … *Warpar Mfg.,* 606 F.Supp. at 858-59 (same, delay of one year and nine months); *Glover,* 578 F.Supp. at 767 (same, delay of thirteen months); *Jackson,* 521 F.Supp. at 1034-35 (same, delay of fifteen months).

### E. MOVANT'S COUNSEL  SHOULD BE SANCTIONED BY HAVING TO PAY HISI'S AND MR. KOWALSKI'S COSTS IN OPPOSING THIS MOTION.

Sanctions should be awarded against Mr. Crowell, in the form of having him pay Kowalski and HISI's costs in opposing this motion, given the baselessness of the motion and the inequitable conduct allegation on which it is based (the law is clear that arguments about prior art cannot be inequitable conduct and Mr. Crowell misled this Court in saying that Mr. Hsia did not provide the PTO with the full quote of the Yamaoka attorneys' response), given that TPI itself told the Court this case had nothing to do with the Kowalski patent and never named Mr. Hsia as a witness and TPI has never pled an inequitable conduct or best mode defense in this case, given TPI's long delay without excuse, and given that TPI probably delayed for strategic reasons – including the fact that it did not want to raise disqualification for a long time because such a motion would also attack its own

counsel from before the beginning of this lawsuit in 2004 until 2006, which was

Oblon Spivak, the very firm that had applied for the Yamaoka patent (see Exhibit

2, which lists Oblon Spivak as counsel filing the application for the Yamaoka

patent, and see TPI's 10/24/05 Report of the Meeting of the Parties which says

Oblon Spivak is TPI's legal counsel.)  Optyl, 760 F.2d at 1050-51 (9th Cir.

1985)(awarding $7000 of attorneys fees to the party that had to oppose the

improperly based disqualification motion).

DATED:  Honolulu, Hawaii, August 28, 2006.

CADES SCHUTTE LLP


/s/ Milton M. Yasunaga
MILTON M. YASUNAGA
ALLISON MIZUO LEE
Attorneys for
WILLIAM R. KOWALSKI and HAWAII
INTERNATIONAL SEAFOOD, INC.