IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TUNA PROCESSORS, INC. ) | CV. NO. 05-00517 BMK |
| ) | |
| Plaintiff, ) | ORDER DENYING |
| ) | COUNTERCLAIM PLAINTIFF |
| vs. ) | WILLIAM R. KOWALSKI AND |
| ) | DEFENDANT AND |
| HAWAII INTERNATIONAL ) | COUNTERCLAIM PLAINTIFF |
| SEAFOOD, INC. ) | HAWAII INTERNATIONAL |
| ) | SEAFOOD INC.'S MOTION FOR |
| Defendant/Counterclaim ) | CLAIM CONSTRUCTION AND |
| Plaintiff, ) | PARTIAL SUMMARY |
| ) | JUDGMENT |
| and ) | |
| ) | |
| WILLIAM R. KOWALSKI, ) | |
| ) | |
| Additional Counterclaim ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TUNA PROCESSORS, INC., ) | |
| ) | |
| Counterclaim Defendant. ) | |
| _____ ) | |

ORDER DENYING COUNTERCLAIM PLAINTIFF WILLIAM R. KOWALSKI
AND DEFENDANT AND COUNTERCLAIM PLAINTIFF HAWAII
INTERNATIONAL SEAFOOD INC.'S MOTION FOR CLAIM
<u>CONSTRUCTION AND PARTIAL SUMMARY JUDGMENT</u>

Before the court is Counterclaim Plaintiff William R. Kowalski and

Defendant and Counterclaim Plaintiff Hawaii International Seafood, Inc.'s Motion

for Claim Construction and Partial Summary Judgment (the "Motion").  This Motion was heard September 8, 2006.  After careful consideration of the Motion, all supporting and opposing documents, and arguments of counsel, Defendant and Counterclaim Plaintiff's Motion is hereby DENIED.

## FACTUAL BACKGROUND

Plaintiff Tuna Processors, Inc. ("TPI") owns U.S. Patent 5,484,619, titled "Method for Curing Fish and Meat by Extra-Low Temperature Smoking" and originally issued to Kanemitsu Yamaoka on January 16, 1996 ("Yamaoka Patent").  Defendant and Counterclaim Plaintiff Hawaii International Seafoods, Inc. ("HISI") sells fish that has been cured through low temperature smoking.[1]  TPI has sued HISI for infringement of the Yamaoka Patent.

Much of the fish HISI sells is cured with smoke produced by Frescomar, a Phillipines corporation.  HISI claims that Frescomar smoke is produced in a way that does not infringe on the Yamaoka patent.  Thus, HISI now moves for summary judgment with respect to its fish cured by Frescomar smoke.  Additionally, HISI requests claim construction of the Yamaoka Patent, that would bar TPI from asserting the doctrine of equivalents.

---

[1] Counterclaim Plaintiff William R. Kowalski is President of HISI.  On October 26, 1999, Kowalski was awarded U.S. Patent 5,972,401, titled "Process for Manufacturing Tasteless Super-Purified Smoke for Treating Seafood to be Frozen and Thawed."

## LEGAL STANDARD

Motions for summary judgment are only granted when the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000).

The court's function in deciding a motion for summary judgment is not to try issues of fact, but to determine whether there are any issues to be tried. Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

In patent cases, an accused infringer may obtain summary judgment of non-infringement only by: (1) "providing evidence that would preclude a finding of infringement," or (2) "by showing that the evidence on file fails to establish a

material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Laboratories, Inc., 271 F.3d 1043, 1046 (Fed Cir. 2001). Where the doctrine of equivalents is asserted, summary judgment should be granted "where the evidence is such that no reasonable jury could determine two elements to be equivalent." Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 38 n.8 (1997).

## DISCUSSION

At issue here is the scope of the Yamaoka Patent. The Yamaoka Patent claims, in part,

> A method for curing raw tuna meat by extra-low temperature smoking comprising the steps of:
> > burning a smoking material at 250° to 400° C. and passing the produced smoke through a filter to remove mainly tar therefrom;
> > cooling the smoke passed through the filter in a cooling unit to between 0° and 5° C. while retaining ingredients exerting highly preservative and sterilizing effects; and
> > smoking the tuna meat at extra-low temperatures by exposure to the smoke cooled to between 0° and 5° C.

(Def.'s Ex. 2.) HISI asks this court to make two rulings with respect to the Yamaoka Patent's scope. First, HISI requests a ruling that Fresomar-produced smoke does not infringe on the Yamaoka Patent because it is produced outside of the temperature range protected by the Yamaoka Patent. Second, HISI requests a ruling that the protection of the Yamaoka Patent does not extend beyond the 250°

C - 400° C temperature range it literally claims, and that TPI cannot assert the doctrine of equivalents to broaden that range.

I. TEMPERATURE AT WHICH FRESCOMAR SMOKE IS PRODUCED

To obtain partial summary judgment, HISI must either (1) provide affirmative evidence that Frescomar smoke is not produced in a way that infringes on the Yamaoka patent or (2) show that there is no material issue of fact essential to TPI's case.  See Novartis, 271 F.3d at 1046.  Ultimately, HISI is not able to make either of these showings, and so summary judgment must be denied.

HISI contends that it has produced sufficient affirmative evidence of Frescomar's high burn temperatures for the Court to find non-infringement of the Yamaoka Patent's claimed temperature range.  HISI principally relies on the Declaration of Francisco Santos, who states that "Frescomar produces and has been producing its tasteless smoke by burning smoking material at temperatures far higher than 500° C." (Santos Decl. ¶ 1.)  Santos also references HISI's Exhibits 22 and 23.  Exhibit 22 is a photograph showing a smoke-producing furnace; Exhibit 23 consists of a photograph that shows a digital device reading "822" and another photograph that shows a similar digital device reading "759."  According to Santos, Exhibit 22 shows "Frescomar's three blazing charcoal blast furnaces " (Santos Decl. ¶ 2), while Exhibit 23 shows "the temperature gauges used by

Frescomar to record the burning temperatures involved in its production of smoke." (Santos Decl. ¶ 3).  HISI argues that this evidence of a higher burn temperature affirmatively shows that Frescomar smoke cannot infringe on the Yamaoka Patent.

TPI, however, contends that HISI's evidence of Frescomar's smoke temperature cannot be relied upon because it is contradictory and imprecise. While HISI's Exhibit 23 shows smoke temperature readings of 822° C and 759°C, TPI points out that this contradicts Frescomar's statement in a January, 2006 letter that its smoke is generated at temperatures "between **600** and **700** degrees Celsius" (Pl.'s Ex. B).  Furthermore, TPI argues, both of these already contradictory pieces of evidence are also both contradicted by Frescomar's own "GRAS Notification Summary" it submitted to the FDA in 1999.  In this GRAS submission, Frescomar stated that its smoke was "generated by burning an organic, food grade smoking material below 850° F (454° C) in a smoke generator." (Pls. Ex. H.)  TPI argues that these inconsistencies in Frescomar's estimates of its smoke temperature cast sufficient doubt on HISI's evidence to preclude summary judgment.

HISI responds by arguing that despite pointing out these contradictions, TPI has still not brought forth any evidence that Frescomar smoke is produced at a temperature between 250° C and 400° C.  Thus, HISI argues, it

remains entitled to summary judgment. Ultimately, however, this argument fails. The evidence TPI has produced and the arguments it has made have cast sufficient doubt on HISI's evidence of Frescomar's smoke production temperature to preclude a finding of summary judgment.  Given Frescomar's contradictory statements and the widely disparate temperature ranges it claim–from less than 454° C to at least 822° C–HISI has *not* provided reliable affirmative evidence that Frescomar smoke does not infringe on the Yamaoka Patent, nor has it showed that there is no issue of material fact.

## II.  CLAIM CONSTRUCTION OF THE YAMAOKA PATENT

In addition to requesting partial summary judgment, HISI also requests claim construction of the Yamaoka Patent.  A patent's claims define the scope of patent protection. Johnson & Johnston Assocs. v. R.E. Service Co., 285 F.3d 1046, 1053 (Fed. Cir. 2004)    The construction of those claims is a matter of law that may be appropriately decided by a judge.  Markman v. Westview Instruments, Inc., 571 U.S. 370, 391 (1996).  However, judges have significant discretion in determining when to construe claims in the course of litigation. Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996) (stating that "Markman does not obligate the trial judge to interpret claims at an early stage in a case" and that "[a] trial court may exercise its discretion to

interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art").

Where a product or process does not literally infringe a patent's claim, infringement may still be found under the doctrine of equivalents. Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 29 (1997) The doctrine of equivalents applies where the two products or processes are "substantially the same thing used substantially the same way to achieve substantially the same result." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 607 (1950). Each element of a claim must be examined independently: "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 30 (1997). Whether or not the doctrine of equivalents applies is a question of fact. Hilton Davis Chemical Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1522 (Fed Cir. 1995) *rev'd on other grounds*, 520 U.S. 17 (1997).

The doctrine of equivalents may not be asserted, however, where the disclosure-dedication rule applies. Johnson & Johnston Assocs., 285 F.3d at 1055. Under the disclosure-dedication rule, a patent that discloses a particular subject matter without claiming it is deemed to have dedicated that subject matter to the

public. Id. at 1053. Subject matter dedicated to the public in this way cannot later be reclaimed through the doctrine of equivalents. See id. at 1055.

Where the disclosed subject matter is generic, however, it is not deemed to have been dedicated to the public. PSC Computer Products v. Foxconn Int'l, 355 F.3d 1353, 1360 (Fed. Cir. 2004). In PSC Computer Products, the patent at issue claimed the use of a metal strap, while the alleged infringer used a plastic strap. Id. The court ruled that the statement "other resilient materials may be suitable for the strap" was too generic to dedicate all non-resilient materials to the public. Id. The statement that "other prior art devices use molded plastic and/or metal parts," on the other hand, was deemed sufficiently specific to have dedicated the use of plastic parts to the public because "a reader of ordinary skill in the art could reasonably conclude . . . that plastic clip parts could be substituted for metal clip parts." Id.

Here, HISI asks for a ruling that the claims of the Yamaoka Patent be constructed so as to protect only processes in which the smoke is produced between 250° C - 400° C. HISI makes two arguments: (1) that the doctrine of equivalents cannot be asserted because the disclosure-dedication rule applies; and, (2) that the doctrine of equivalents should not be applied because the Yamaoka Patent claims a specific numerical range.

First, HISI first argues that the disclosure-dedication rule prohibits the application of the doctrine equivalents and limits the Yamaoka Patent's scope to the 250° C - 400° C literally claimed in the patent. HISI argues that Yamaoka dedicated all temperature ranges above 400° C to the public by his disclosure "in both the text and drawings of the specifications . . . that smoke can be made by burning smoking material at temperatures outside of the range of 250° to 400°C." (Def.'s Mem. in Supp. Mot., 26-27.) In particular, HISI points to four graphs in the patent application that show the quantities of gas generated at burn temperatures from 200° C to 1000° C. (Def.'s Mem. in Supp. Mot., 27, n.13.)

TPI contends, however, that "[t]he statement of fact that smoke can be made outside of the claimed temperature range does not allow a person of ordinary skill to identify any disclosed but unclaimed alternative optimal or beneficial smoking temperature." (Pl.'s Mem. in Opp. Mot., 21.) That is, a person of ordinary skill in the art could not look at the Yamaoka Patent application and recognize that a viable alternative method existed for cold smoking fish. Thus, TPI argues, the disclosure-dedication rule does not apply.

TPI prevails. Just as stating that "other resilient materials" could be used was too generic to dedicate the use of plastic materials to the public, <u>PSC Computer Products</u>, 355 F.3d at 360, so here disclosure of the volume of gas

released at various temperatures is too generic to dedicate all temperatures above 400° to the public. The Yamaoka patent may or may not extend beyond the 250° - 400° covered by its literal language, but TPI will not be barred from arguing so at a later date. If TPI does assert the doctrine of equivalence in order to claim infringement, the court will at that time assess whether or not the doctrine applies, and to what extent.

    Second, HISI argues that regardless of whether or not the disclosure-dedication rule applies, the scope of the Yamaoka Patent should still be limited to the specific numerical range it claims. Essentially, HISI requests a blanket determination of non-equivalence. HISI argues that the doctrine of equivalents cannot broaden claims that are bounded by discrete numerical ranges. A number of cases support HISI's argument. See Talbert Fuel Systems Patents Co. V. Unocal Corp., 247 F.3d 1355, 1360 (Fed. Cir. 2003) (finding no equivalence for a temperature outside of the literally claimed range because it was "not a matter of the 'imprecision of language,' . . . but a measurable property of matter"); Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc., 214 F.3d 1302, 1307 (Fed. Cir. 2000) (finding no equivalence for a latitude of less than 30° where the claim specified latitudes 30° to 45° because to do so would "render[] the reference to 30° superfluous"); Jenric/Pentron, Inc. v. Dillon Co., Inc., 205 F.3d 1377, 1381

(Fed. Cir. 2000) (finding no equivalence outside of the claim's precise numerical ranges for chemical components).

HISI's argument on this point is quite strong. Indeed, TPI is unable to cite any cases to the contrary. TPI argues, however, that "the question of equivalence is a question of material fact" and that the facts here remain disputed. (Pl.'s Mem. Opp. 20.) TPI is correct. Whether the doctrine of equivalents applies is indeed a question of fact. Graver Tank & Mfg. Co., 339 U.S. at 609 (1950); Warner-Jenkinson Co., 62 F.3d at 1522. In the cases cited by HISI, the facts were not in dispute regarding the allegedly infringing product or process. There were concrete numerical values which could be determined equivalent or not equivalent to the numerical ranges claimed in the patents. Such is not the case here.

Here, the temperature range at which Frescomar smoke is produced is uncertain and disputed. The Court cannot make a definitive ruling of non-equivalence without knowing to what the patent at issue is supposedly not equivalent. Moreover, courts have substantial discretion in deciding at what point in the litigation process to engage in claim construction. Sofamor Danek Group, Inc., 74 F.3d at 1221. Accordingly, the Court declines to construct the claims of the Yamaoka Patent at this time. However, once more facts have been developed

regarding the precise temperature at which Frescomar smoke is produced, HISI may once again request a ruling of non-equivalence.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Partial Summary Judgment and Claim Construction.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: October 17, 2006

Tuna Processors, Inc. v. Hawaii International Seafood, Inc., ORDER DENYING COUNTERCLAIM PLAINTIFF WILLIAM R. KOWALSKI AND DEFENDANT AND COUNTERCLAIM PLAINTIFF HAWAII INTERNATIONAL SEAFOOD INC.'S MOTION FOR CLAIM CONSTRUCTION AND PARTIAL SUMMARY JUDGMENT; CV NO. 05-00517 BMK.                                  13