IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TUNA PROCESSORS, INC. | ) | CIV. NO. 05-00517 BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING HAWAII |
| | ) | INTERNATIONAL SEAFOOD, |
| v. | ) | INC. AND WILLIAM R. |
| | ) | KOWALSKI'S MOTION FOR |
| HAWAII INTERNATIONAL SEAFOOD, INC., | ) | RECONSIDERATION |
| | ) | |
| Defendant/Counterclaim Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILLIAM R. KOWALSKI, | ) | |
| | ) | |
| Additional Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TUNA PROCESSORS, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| _____ | ) | |

ORDER DENYING HAWAII INTERNATIONAL SEAFOOD, INC. AND
WILLIAM R. KOWALSKI'S MOTION FOR RECONSIDERATION

Before the Court is Defendant and Counterclaim Plaintiff Hawaii

International Seafood, Inc. ("HISI") and Counterclaim Plaintiff William R.

Kowalski's ("Kowalski") motion for reconsideration of the Court's October 17 order denying HISI and Kowalski's request for summary judgment and claim construction. After careful consideration of the motion and the supporting and opposing memoranda, the motion for reconsideration is hereby DENIED.

## PROCEDURAL HISTORY

Plaintiff Tuna Processors, Inc. ('TPI") has filed a patent infringement action against Defendant HISI. TPI owns U.S. Patent 5,484,619, titled "Method for Curing Fish and meat by Extra-Low Temperature Smoking" and originally issued to Kanemitsu Yamaoka on January 16, 1996 ("Yamaoka Patent"). HISI distributes smoked fish, much of which is cured with smoke produced by Frescomar, a Philippines corporation. Counterclaim Plaintiff Kowalski is the president of HISI.

On June 23, 2006, HISI and Kowalski moved for partial summary judgment and claim construction with respect to all HISI product cured with Frescomar smoke. HISI and Kowalski requested (1) a judgment that Frescomar smoke is produced in a way that does not infringe on the Yamaoka Patent, and (2) a judgment barring TPI from asserting the doctrine of equivalents with respect to Frescomar smoke. After hearing the motion on September 8, the Court issued an order denying HISI and Kowalski's request for partial summary judgment and claim construction on October 17 (hereinafter "October 17 Order").

On October 31, 2006, HISI and Kowalski filed this motion requesting that the Court reconsider its October 17 Order. In support of this motion for reconsideration, HISI and Kowalski attached new evidence. TPI moved that some of this new evidence be stricken on the grounds of its untimely disclosure. On February 5, 2007, the Court denied TPI's motion to strike (hereinafter "February 5 Order"), but allowed TPI an additional thirty days to provide additional evidence and arguments to rebut the tardy submissions.

On March 7, 2007 TPI filed its supplemental memorandum in opposition to HISI and Kowalski's motion to reconsider. HISI and Kowalski objected that some of TPI's exhibits were beyond the scope authorized for this supplemental briefing and moved that they be stricken. This motion was granted in part and denied in part.

With all supplemental briefing concluded, the Court now takes up the motion to reconsider.

## LEGAL STANDARD

In patent cases, an accused infringer may obtain summary judgment of non-infringement only by: (1) "providing evidence that would preclude a finding of infringement," or (2) "by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue

3

Laboratories, Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001.)  Where the doctrine of equivalents is asserted, summary judgment should be granted "where the evidence is such that no reasonable jury could determine two elements to be equivalent." Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 38 n.8 (1997).  All facts must be viewed in the light most favorable to the nonmovant.  Novartis, 271 F.3d at 1046.

In summary judgment proceedings, the movant "has the initial responsibility of identifying the legal basis of its motion, and of pointing to those portions of the record that it believes demonstrate the absence of a genuine issue of material fact."  Id.  Once the movant makes this initial showing, the burden then shifts to the nonmovant "to designate specific facts showing that there is a genuine issue for trial."  Id.  An issue of material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Motions for reconsideration may only be brought if there has been (1) "[d]iscovery of new material facts not previously available," (2) "[i]ntervening changes in law," or (3) a "[m]anifest error of law or fact."  Local Rule 60.1.

## DISCUSSION

On October 17, 2006, this Court denied HISI and Kowalski's motion for partial summary judgment and claim construction.  Summary judgment was denied because HISI and Kowalski had failed to meet their burden of showing the absence of a genuine issue of material fact regarding the temperatures at which Frescomar produces smoke, while the request for claim construction was denied because the Court found that the disclosure-dedication rule did not apply and that there were insufficient facts to enjoin TPI from asserting the doctrine of equivalents.  HISI and Kowalski now ask the Court to reconsider these rulings on three grounds: (1) proper attribution of the 1999 GRAS Notification Summary to HISI, rather than Frescomar, eliminates any material fact supporting TPI's position that Frescomar's smoke temperatures might lie within the Yamaoka Patent's range; (2) conclusive new evidence in favor of HISI and Kowalski's position renders not genuine any factual dispute regarding Frescomar's smoke production; and, (3) that the Court made a manifest error of law in not applying the disclosure-dedication rule to HISI and Kowalski's request for claim construction.

After re-attributing the 1999 GRAS Notification Summary, examining the new evidence before it, and reconsidering its ruling on the disclosure-dedication rule, the Court declines to alter its ruling of September 8, 2006.  A genuine issue of

material fact still remains, precluding summary judgment, and the Court still declines to enjoin TPI from asserting the doctrine of equivalents at this time.

I.  PROPER ATTRIBUTION OF THE GRAS NOTIFICATION SUMMARY

HISI and Kowalski correctly point out to the Court that the 1999 GRAS Notification Summary was authored by HISI, not Frescomar. This document states that the fish is treated with smoke produced at temperatures "below 850° F (454° C)." (Mem. Opp. Mot. for Partial Summary Judgment, Pl.'s Ex. H.) The Court, mistakenly attributing this document to Frescomar, ruled that if taken as true, the GRAS Notification Summary provided sufficient grounds for a jury to find that Frescomar smoke was produced not at the high temperature ranges asserted by HISI and Kowalski, but within the lower temperature range claimed by the Yamaoka Patent.[1]

While proper attribution of the 1999 GRAS Notification Summary to HISI weakens its evidentiary value, the document still provides a sufficient basis for a reasonable jury to find that Frescomar's smoke was produced at temperatures

---

[1] In support of their original motion for partial summary judgment, HISI and Kowalski principally relied on two pieces of evidence to show that Frescomar was not producing tasteless smoke within the 250-400° range claimed by the Yamaoka Patent. First, they submitted a declaration by Frescomar's president, Francisco Santos, which stated that Frescomar smoke was produced "at temperatures far higher than 500° C." (Mem. Supp Mot. for Partial Summary Judgment, Santos Decl. ¶ 1.) Second, they submitted pictures of the Frescomar blast furnace reading "822" and "759" (Mem. Supp. Mot. for Partial Summary Judgment, Ex. 22-23).

which infringed on the Yamaoka Patent. On its "Cryofresh" website, HISI prominently features the 1999 GRAS Notification Summary under the "FDA" page. It is reasonable to infer that HISI's product is produced in conformance with the specifications listed in this document. Because "virtually all" of HISI's product is processed with Frescomar smoke (Mem. Supp. Mot. Sum. Judgement, Kowalski Decl.), it is also reasonable to assume that at least some Frescomar smoke is produced in conformance with the specifications listed in HISI's GRAS Notification Summary. Even after re-attributing the GRAS Notification Summary to HISI, a genuine dispute of material fact remains about the temperature at which Frescomar produces smoke.

II. NEW EVIDENCE

HISI and Kowalski also seek reconsideration on the ground that new evidence has become available conclusively showing that Frescomar can and does produce smoke only at temperatures of 600° C and above. This is essentially an argument that the evidence in favor of HISI and Kowalski is now so strong that any dispute of material fact created by the 1999 GRAS Notification Summary is no longer "genuine." Supplemental evidence submitted by TPI shows that a genuine issue of material fact still remains, and so summary judgment is still inappropriate at this time.

### A. HISI and Kowalski's New Evidence

HISI and Kowalski's principal pieces of new evidence are a video recording and written transcript of the September 13 joint inspection of the Frescomar smoke-production facility. During this inspection, Frescomar president Francisco Santos demonstrated the Frescomar smoke production process. The blast furnaces were heated to higher than 600° C, sawdust was introduced, and smoke was produced. In addition, HISI and Kowalski have also submitted Frescomar's burn records from December 15, 2004 through August 31, 2006. According to these records, Frescomar never produces smoke at temperatures of less than 600° C. These pieces of evidence are further supported by the declaration of Shem Makiputin, the operations supervisor for the Frescomar facility, who declares that Frescomar "do[es] not collect any smoke when the burning temperature is below 600° C" and "do[es] not even add sawdust to any combustion chamber if the temperature is below 600° C." (Mem. Supp. Mot. for Reconsideration, Makiputin Decl. ¶ 3).

### B. TPI's New Evidence

In response to HISI and Kowalski's new evidence, TPI also submitted new evidence in a supplemental memorandum authorized by the Court. Some of this supplemental evidence will not be considered by the Court at this time. First,

the Court has ruled that the Kumazawa and Hagadone reports (Exhibits 1-5) exceeded the scope of the supplemental briefing authorized by the Court, and ordered that they be stricken from TPI's supplemental memorandum.  Second, some portions of the Calamian Declaration recount Mr. Calamian's conversation with a third party.  Those third party statements constitute inadmissible hearsay and will similarly be disregarded by the Court at this time.

        The Court will consider, however, the declaration of Mr. Alvarado and the attached Exhibits A, B, and C.  Mr. Alvarado declares that he created a duplicate of the Frescomar machine, and operated it for several days.  He found that "the machine had a very short life cycle" and that he was "unable to run it for more than twenty (20) hours before having to disassemble the machine and replace the horizontal tube."  (Alvarado Decl. ¶ 9.)  He also found that "the most efficient and greatest smoke production occurs at temperatures of under 600 degrees centigrade" and that "at high temperatures above 600 degrees centigrade, the smoke produced was more noxious and required greater filtration to remove odor." (Alvarado Decl. ¶ 9).  Based on these findings, Alvarado declares that he does not believe that the Frescomar machine could be regularly operated at temperatures of greater than 600° C.  Alvarado also attaches as exhibits photographs which purportedly depict

the machine he constructed and the damage sustained by the horizontal tube after several days of use.

Viewed in the light most favorable to TPI, the Alvarado declaration and the supporting exhibits tend to show that Frescomar could not and would not produce smoke at temperatures greater than 600° C on a regular basis. Because a reasonable jury could find in favor of TPI based on the Alvarado declaration, the Court finds that a genuine issue of material fact still exists regarding the temperature at which Frescomar's tasteless smoke is produced.

## III. DISCLOSURE DEDICATION RULE

Finally, HISI and Kowalski also assert that the Court made a manifest error of law in failing to apply the disclosure-dedication rule to all temperatures other than the 250°-400° C range literally claimed by the Yamaoka patent. The disclosure-dedication rule prohibits the use of the doctrine of equivalents where a patent discloses a particular subject matter without claiming it. Johnson & Johnson Assocs. v. R.E. Serv. Co., 285 F.3d 1046, 1055 (Fed. Cir. 2004). Where the subject matter disclosed is too generic, however, it is not deemed to have been dedicated to the public. PSC Computer Prods. v. Foxconn Int'l, 355 F.3d 1353, 1360 (Fed. Cir. 2004). In its October 17 Order, the Court ruled that the line graphs in the Yamaoka patent showing the various volumes of gas produced by smoke at different

temperatures were too generic to disclose to the public all temperatures outside of the 250°-400° C range literally claimed by the patent.

HISI and Kowalski now argue that this ruling was a manifest error of law. They argue that "the graphs in the Yamaoka patent are not 'generic'" because the line graphs in the Yamaoka patent "specifically disclose that smoke can be made by burning at temperatures of '400' degrees C, '500' degrees C, '600' degrees C, '700' degrees C, '800' degrees C, '900' degrees C, and '1000' degrees C" and all temperatures between these intervals. (Mem. Supp. Mot. to Reconsider 2.) While HISI and Kowalski are correct that the data disclosed by the graphs in the Yamaoka patent is specific, the *information* that these graphs disclose is not specific, but generic. There is no doubt, based on these graphs, as to what specific volume of gas is released at any particular temperature. This specific data, however, would not allow a person of ordinary skill in the art to look at the Yamaoka Patent and recognize that a viable alternative method existed for treating fish with low temperature filtered smoke. Thus, the disclosure-dedication rule does not apply, and the Court did not err in declining to enjoin TPI from asserting the doctrine of equivalents.

## CONCLUSION

For the foregoing reasons, HISI and Kowalski's motion for reconsideration is hereby DENIED.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: April 16, 2007

<u>Tuna Processors Inc. v. Hawaii International Seafood, Inc.</u>; ORDER DENYING HAWAII INTERNATIONAL SEAFOOD, INC. AND WILLIAM R. KOWALSKI'S MOTION FOR RECONSIDERATION; Civ. No. 05-00517 BMK.